Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com

*Of Counsel:*
STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, Florida 33316
Telephone (954) 767-4819
Facsimile (954) 767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff
Chanel, Inc.

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York Corporation,<br><br>Plaintiff,<br><br>-against-<br><br>MOTIVIC N.Y., INC., a New York corporation, d/b/a MOTIVIC N.Y. d/b/a MOTIVIC d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and KEN CHIU, an individual, d/b/a MOTIVIC N.Y. d/b/a MOTIVIC d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and DOES 1-10<br><br>Defendants. | Case No. 08-CIV-6418<br><br><br>**(Filed under seal)** |

**PLAINTIFF'S EMERGENCY *EX PARTE* APPLICATION FOR:**
**(A) TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER; (B) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; (C) SUBSTITUTE CUSTODIAN ORDER; (D) EXPEDITED DISCOVERY; AND (E) AN**

## ORDER TEMPORARILY SEALING THE
## COURT FILE, WITH MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff, Chanel, Inc., a New York corporation ("Chanel" or "Plaintiff") hereby moves on an emergency basis for: (a) a temporary restraining order and seizure order; (b) order to show cause why a preliminary injunction should not issue; (c) a substitute custodian order; (d) expedited discovery; and (e) an order temporarily sealing the file. In support thereof, Plaintiff submits the following Memorandum of Law.

## MEMORANDUM

### I.    INTRODUCTION

Plaintiff is suing Motivic N.Y., Inc., a New York corporation,[1] d/b/a Motivic N.Y. d/b/a Motivicny.com d/b/a Seven Stars Industries, Ltd. d/b/a TPF ("Motivic NY") and Ken Chiu, an individual, d/b/a Motivic N.Y. d/b/a Motivicny.com d/b/a Seven Stars Industries, Ltd. d/b/a TPF ("Chiu")(collectively the "Motivic Defendants") for federal trademark counterfeiting and infringement, and false designation of origin. This suit arises out of Defendants' fraudulent manufacture, promotion, advertisement, distribution, and sale of counterfeit Chanel branded costume jewelry, pendants, earrings and bracelets (the "Defendants' Goods"), bearing spurious marks which are identical copies of Chanel's federally registered trademarks CC MONOGRAM and CHANEL (the "Chanel Marks"). Specifically, the Defendants are using the Chanel Marks in the same stylized fashion in connection with the marketing, advertisement, and sale of counterfeit costume jewelry, pendants, earrings and bracelets. Thus, the Defendants are falsely representing to the public and the trade that Defendants' Goods are authentic products authorized for sale by the Plaintiff. In reality, Defendants' Goods are worthless counterfeit items that

---

[1] Motivic N.Y., Inc. is an active corporation organized under the laws of the State of New York with its principal place of business identified as 39 West 32nd Street, 4th Floor, New York, New York 10001. See Declaration of Robert Holmes, attached hereto as Exhibit "A" together with a true and correct copy of the corporate printout from the New York Secretary of State attached thereto as Exhibit "1."

Defendants admittedly imported, manufactured, or had manufactured on their behalf.

The Defendants' activities constitute willful and intentional infringement and counterfeiting of the Chanel Mark in total disregard of Plaintiffs' rights, and have taken place in spite of Defendants' knowledge that Defendants' use of Plaintiff's Chanel Marks was and is in direct contravention of Plaintiff's rights. Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff. Among other things, Defendants have: (1) deprived Plaintiff of its right to determine the manner in which the Chanel Marks are presented to the public through merchandising; (2) defrauded the public into thinking that Defendants' Goods are valuable, authorized goods of Plaintiffs (3) deceived the public as to the origin, sponsorship and/or association of Defendants' Goods; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill and the commercial value of the Chanel Marks.

## II.     STATEMENT OF FACTS

Plaintiff is, and at all times relevant hereto, has been the owner of the following federally registered trademarks:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| CHANEL | 0,612,169 | September 13, 1955 |
| CHANEL | 0,902,190 | November 10, 1970 |
| CC MONOGRAM | 1,501,898 | August 30, 1988 |
| CHANEL | 3,133,139 | August 22, 2006 |
| NO. 5 | 3,149,203 | September 9, 2006 |

which are registered in International Class 4 for use in connection with the manufacture and distribution of the costume jewelry, pendants, earrings and bracelets. A true and correct copy of the Federal Registrations for the Chanel Mark are attached hereto as Exhibit "B."

Defendants do not have, nor have they ever had, the right or authority to use Plaintiff's

3

Chanel Marks for any purpose. See Declaration of Adrienne Hahn Sisbarro ("Hahn Decl.") at ¶ 9 attached hereto as Exhibit "C." However, despite their known lack of authority to do so, Defendants have been advertising, offering for sale and/or selling costume jewelry, pendants, earrings and bracelets bearing counterfeit marks, which are identical to the registered Chanel Marks. See Hahn Decl. at ¶¶ 11-13; Declarations of Karin Tiler ("Tiler Decl.") attached hereto as "Exhibit D" and Exhibits "3" – "5" attached thereto; and Stephen Gaffigan ("Gaffigan Decl.") attached hereto as Exhibit "E" and Composite Exhibit "1" attached thereto. Moreover, given the Defendants' slavish copying of Plaintiff's marks, label size, color scheme, printing, and design, Plaintiff's and Defendants' Marks, and the products sold thereunder, are indistinguishable to consumers at the point of sale.[2] Section 1127 of the Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. Also, using the "ocular test" of direct comparison of Defendants' Goods with Plaintiff's registrations, courts have found that even marks which are slightly modified from the registered mark copied are to be considered counterfeit marks. See Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp., 770 F. Supp. 754 (P.R. 1991). See also Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Exp, Inc., 601 F. Supp. 1 (S.D. Fla. 1983).

The Defendants' Goods are all worthless counterfeits that Defendants have likely recently manufactured, had manufactured on their behalf, imported, or purchased. Defendants' Goods, bearing the counterfeit Chanel Marks, are being promoted, advertised, sold, and offered for sale by Defendants through a retail and wholesale business in this Judicial District. See Hahn Decl. at ¶¶11-13; Tiler Decl. at ¶¶10-14; and Gaffigan Decl. at ¶2. Defendants are making substantial sums of money by preying upon their unsuspecting purchasers who have no knowledge that Defendants are defrauding them through the sale of worthless counterfeit goods. Defendants are falsely representing to consumers and the trade that their counterfeit goods are

---

[2] Despite their visual similarity to consumers, Defendants' Counterfeit Goods are substantially different in quality.

genuine, authentic, and authorized by Plaintiff.

At all times relevant hereto, Defendants have been aware of Plaintiff's (a) ownership of the Chanel Marks; (b) exclusive rights to use and license such Chanel Marks; and (c) substantial goodwill embodied in, and favorable recognition for, the Chanel Marks for costume jewelry, pendants, earrings and bracelets.

These Motions are being filed on an emergency *ex parte* basis to prevent the depletion of Defendants' Goods, which were recently confirmed to be in Defendants' possession by Plaintiff's investigator, and to allow a ruling hereon before evidence becomes stale. See Tiler Decl. at ¶¶7-14.

## III.    ARGUMENT

### A.    PLAINTIFF SHOULD BE GRANTED AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER OF SEIZURE.

#### 1.    An *Ex Parte* Order is Essential to Prevent Immediate Injury.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." This is such a case.

Defendants fraudulently promote, advertise, sell, and/or offer for sale different quality goods bearing counterfeits of the Chanel Marks. With every passing day, Plaintiff is suffering greater harm and consumers are being defrauded out of more and more money. If notice is given of Plaintiff's intent to seek a temporary restraining order, Defendants can easily "unload" or hide the counterfeit goods or means of making them and destroy their records to avoid being caught with Defendants' Goods. The courts, recognizing the propensity of certain Defendants to

dispose of their inventory of counterfeit merchandise and records, have not hesitated to grant *ex parte* temporary restraining orders and orders of seizure. See Nadim Klink, et al. v. M&R Perfumes, Cosmetics & Watches, Inc., et al., Case No. 04-cv-00594 (TPG), United States District Court, Southern District of New York. See also Reebok Int'l, Ltd. v. Marnatech. Enters., Inc., 970 F.2d. 552 (9th Cir. 1992); Toyota Jidosha Kabushiki Kaisha v. Collision Parts Supply, Inc., 18 U.S.P.Q.2d 1812, 1814-15 (S.D. Fla. 1990); Rolex Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484 (S.D. Fla. 1986); Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp., 770 F. Supp. 754 (P.R. 1991).

As one court noted in directing the entry of a temporary restraining order without notice against a seller of counterfeit goods, "[i]f notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action." In Re Vuitton et Fils S.A., 606 F.2d 1, 5 (2d Cir. 1979). Even service of a temporary restraining order is frequently not effective to freeze the inventory of infringing merchandise and documents related thereto in the hands of counterfeiters. Not only are the Defendants herein engaging in illegal activities, but they also appear to operate a sophisticated business. They are well aware that trademark counterfeiting is illegal. Specifically, the Defendants acknowledged to Chanel's investigator that they could "get in trouble" for selling Chanel branded jewelry, and only acknowledged having an inventory of Chanel branded jewelry products available for sale upon learning that Chanel's investigator only intended to sell the counterfeit Chanel branded jewelry outside the United States. See Tiler Decl. at ¶¶ 7 - 8. Accordingly, under the circumstances of this case, it is highly likely that if Defendants were given prior notice of this action, Defendants would destroy, conceal, or transfer their records, their counterfeit goods, and the means for making and selling these items. This Court should prevent such an injustice from occurring.

      **2.**      **This Court Has the Authority to Issue An *Ex Parte* Seizure Order Directing the Seizure of Counterfeit and Infringing Goods, the Records Related Thereto, and the Means for Making Such Goods.**

The Trademark Counterfeiting Act of 1984 (the "Anti-Counterfeiting Act"), 15 U.S.C. §1116(d), specifically authorizes this Court to issue *ex parte* orders directing the seizure and impoundment of counterfeit merchandise and the means of making counterfeit merchandise, as well as business records relating thereto. By enacting the Anti-Counterfeiting Act, Congress codified prior judicial practice. As recognized by Congress and the courts, absent such *ex parte* relief, willful counterfeiters could continue to engage in their counterfeiting activity by concealing their counterfeit goods, the means for making such items, and any records documenting the counterfeiter's unlawful business transactions. As set forth by Congress in its Joint Statement on Trademark Counterfeiting Legislation:

> The purpose of the ex parte seizure provision is to provide victims of trademark counterfeiting with the means of ensuring that the courts are able to exercise their jurisdiction effectively in counterfeiting cases. Testimony before both the House and Senate Judiciary Committees established that many of those who deal in counterfeits make it a practice to destroy or transfer counterfeit merchandise when a day in court is on the horizon. The *ex parte* seizure procedure is intended to thwart this bad faith tactic, while ensuring ample procedural protections for persons against whom such orders are issued.

130 Cong. Rec. H12080 (October 10, 1984).

As amended, 15 U.S.C. §1116(d)(4)(B) provides that, prior to issuing such an order, this Court must find:

      (i)      an order other than an *ex parte* seizure order is not adequate to achieve the purposes of Section 32 of this Act (15 U.S.C. §1114);

      (ii)      the applicant has not publicized the requested seizure;

      (iii)      the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for

sale, or distribution of goods or services;

(iv)    an immediate and irreparable injury will occur if such seizure is not ordered; granted the mandamus petition of a trademark owner requiring the district court to grant a temporary restraining order without notice to the counterfeiters;

(v)    the matter to be seized will be located at the place identified in the application;

(vi)    the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii)    the person against whom seizure would be ordered, or persons acting in concert with such person, would be likely to destroy, move, hide, or otherwise make such matter inaccessible to the court if the applicant were to proceed on notice to such person.[3]

By applying these requirements to the instant case, there is no question that Plaintiff should be granted the entry of an *ex parte* seizure order. The evidence provided here reflects the Defendants are organized and sophisticated counterfeiters, who will not likely voluntarily stop their sale of the counterfeit Chanel branded costume jewelry, pendants, earrings and bracelets, nor cooperate in any process to stop their sale of the counterfeit Chanel branded costume jewelry, pendants, earrings and bracelets. A seizure order should be entered immediately in order to prevent Defendants from continuing to defraud Plaintiff and the consuming public.

**(a)    An *Ex Parte* Seizure Order is the Only Effective Remedy (15 U.S.C. §1116(d)(4)(B)(i) and (vii)).**

The evidence offered by Plaintiff in support of this application clearly demonstrates that

---

[3] While notice is ordinarily a fundamental element of due process, the United States Supreme Court has recognized that "[t]here may be cases in which [Plaintiff] could make a showing of immediate danger that [Defendants] will destroy or conceal disputed goods." Fuentes v. Shevin, 407 U.S. 67, 93 (1972). Moreover, the strict requirements that applicant must meet prior to obtaining the seizure order protect Defendants' rights.

an *ex parte* seizure order is the only effective means of ensuring that additional evidence of Defendants' counterfeiting enterprises will be procured and preserved. In view of the fact that the Defendants carry on their illegal and fraudulent counterfeiting businesses, it is a virtual certainty that Defendants, like so many other counterfeiters, are likely to divest themselves of their inventory of counterfeit goods, relevant business records, and the means for making or obtaining their fake goods absent the issuance of an *ex parte* seizure order. Given that Defendants face the prospect of losing their inventory, having a substantial adverse judgment rendered against them, and being subjected to potential criminal liability, see 18 U.S.C. § 2320; U.S. v. Hon, 904 F.2d 803 (2d Cir. 1990), cert. denied, 498 U.S. 1069 (1991), it would be naive to expect Defendants to voluntarily surrender their counterfeit goods, the means for making or obtaining such goods, and the business records documenting their counterfeiting activities.[4]

The only effective means of immediately stopping Defendants' massive fraud upon the public is by the entry of an *ex parte* seizure order. Based upon the evidence offered, Plaintiff submit it has satisfied the requirements of 15 U.S.C. §1116(d)(4)(B), Subsections (i) and (vii).

> **(b)** **Equitable Considerations Clearly Dictate the Issuance of an *Ex Parte* Seizure Order (15 U.S.C. § 1116(d)(4)(B)(iii).**

Subsection 1116(d)(4)(B)(iii) provides that a plaintiff must demonstrate that it is likely to prove that defendants "used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and services." As shown in the Declarations of Hahn at ¶¶ 11 - 13, Tiler at

---

[4] The Anti-Counterfeiting Act underscores these conclusions. By imposing substantial criminal sanctions for the intentional distribution of counterfeit merchandise, 18 U.S.C. § 2320, Congress has effectively increased the likelihood that counterfeiters will attempt to conceal all evidence of their criminal enterprise. A finding that an *ex parte* seizure order is the only effective remedy inevitably follows from the satisfaction of other factors. In fact, it has been held to be an abuse of discretion for a court to deny an application for an *ex parte* seizure order on the ground that orders other than a seizure order would be adequate.

¶¶ 10 - 14, and Gaffigan at ¶2, the Plaintiff's burden is met in this case. Defendants are advertising, distributing, selling, and offering for sale Defendants' Goods bearing counterfeits of Plaintiff's Chanel Marks. In doing so, they are defrauding the public and the Plaintiff, and are also putting consumers' health at risk, since the counterfeit jewelry products being sold by the Defendants are of an unknown chemical makeup, and like so many counterfeit jewelry items seized by Chanel in the past, may contain lead.

Further, pursuant to subsection 1116(d)(4)(B)(iv), Plaintiff must demonstrate that "immediate and irreparable injury will occur" if the *ex parte* seizure order is denied. This factor is shown by the Plaintiff herein since: (a) the distribution of counterfeit and infringing merchandise has consistently been held to constitute irreparable injury, and (b) Defendants will likely dispose of their counterfeit goods, records, and the means for making or obtaining their counterfeit goods if they receive notice of this action, thereby effectively denying Plaintiff any meaningful remedy. Furthermore, the public will continue to be defrauded and possibly caused physical harm by Defendants if the Court does not put an immediate halt to Defendants' activities through the entry of an *ex parte* seizure order.

As the Joint Statement on Trademark Counterfeiting Legislation observed with respect to this requirement:

> The fourth required finding, derived from both the Senate and House bills, is that an "immediate and irreparable injury" will occur if a seizure is not ordered. This will not ordinarily be a difficult showing in a counterfeiting case. If the mark in question is likely to be found to be counterfeit, then the applicant will ordinarily be able to show irreparable harm that the goods are likely to be distributed if their seizure is not ordered. The courts have repeatedly held that the distribution of infringing goods constitutes irreparable injury sufficient to order preliminary relief. See for example, In re Vuitton et Fils S.A., 606 F.2d 1, 4 (2d Cir. 1979); Helene Curtis Indus., Inc. v. Church & Dwight Co., 560 F.2d 1325, 1332-33 (7th Cir. 1977), cert. denied, 434 U.S. 1070

> (1978); <u>Omega Importing v. Petri-Kine Camera Co.</u>, 451 F.2d
> 1190, 1195 (2d Cir. 1971).  Since the marks at issue here are not
> merely infringing but counterfeit marks, this conclusion will be
> still more easily reached.

130 Cong. Rec. H12081 (October 10, 1984).

Finally, 15 U.S.C. § 1116(d)(4)(B)(vi) requires this Court to find the Plaintiff's equitable

interests are more substantial than those of Defendants.  The Defendants herein are knowingly

and intentionally trafficking in counterfeit goods.  <u>See</u> Declarations of Hahn, Tiler, and Gaffigan,

respectively.  Defendants have no legal or equitable right to defraud the public.  Conversely,

Plaintiff's equitable and legal interest in removing unauthorized counterfeit and potentially

dangerous merchandise from the marketplace clearly outweighs any interest of the Defendants

and mandates the issuance of an *ex parte* seizure order.[5]

Plaintiff has conclusively shown Defendants are storing and selling counterfeit goods and

are profiting from their illicit business.  Absent an order allowing for seizure of these goods,

Defendants will suffer no repercussions and will continue to flood the market with counterfeit

goods.  Not only will Plaintiff's reputation be destroyed, but consumers will continue to be

bilked out of substantial sums of money.  More importantly, the counterfeit goods being sold by

the Defendants are goods of an unknown chemical makeup and are likely to come in contact with

---

[5] As the Joint Statement on Trademark Counterfeiting Legislation concluded:

> In cases in which the other listed requirements are satisfied, the
> sponsors do not anticipate that this showing will be a difficult one.
> The hardship to a plaintiff that is caused by the distribution of
> goods bearing counterfeit marks will usually be great; a
> Defendants' legitimate interest in retaining counterfeits, which he
> or she would hide or destroy if notified of the suit, will normally be
> minimal. <u>Cf.</u>, <u>Atari, Inc. v. North American Philips Consumer
> Elec. Corp.</u>, 672 F.2d 607, 620 (7th Cir. 1982), cert. denied, 103 S.
> Ct. 176 (1982); <u>Corning Glass Works v. Jeannette Glass Co.</u>, 308
> F. Supp. 1321, 1328 (S.D.N.Y. 1970), aff'd, 432 F.2d 784 (2d Cir.
> 1970).

130 Cong. Rec. H12081 (October 10, 1984).

the skin of unsuspecting consumers in reliance upon Plaintiff's reputation for safe, high quality products. Thus, the products may represent a health danger to the community if they are not seized. Equity and public safety thus mandate the issuance of an *ex parte* seizure order in this case.

### (c)    Plaintiff Has Satisfied the Procedure Requirements Set Forth in Section 1116(d)(4)(B)(ii) and (v).

Section 1116(d)(4)(B)(ii) requires that prior to issuing an *ex parte* order, this Court must find that Plaintiff has not publicized the requested seizure. As shown in the Declarations of Hahn at ¶14, Tiler at ¶15, and Gaffigan at ¶3, Plaintiff has met this burden. Plaintiff has further sought to ensure the seizure order will not be publicized by requesting the records and file in this case be temporarily sealed.

In addition, Plaintiff has demonstrated that "the matter to be seized will be located at the places identified in the application." 15 U.S.C. § 1116(d)(4)(B)(v). Plaintiff, through its investigator, has visited and identified Defendants' place of business, has seen counterfeit goods and related business records at Defendants' premises, and recently purchased and inspected samples of the Defendants' costume jewelry, pendants, earrings and bracelets at the Defendants' place of business. See Declarations of Hahn at ¶¶11-13, and Tiler at ¶¶5-13. Those samples bearing the Chanel Marks at issue have been conclusively identified as counterfeits. See Id. Hence, Plaintiff has demonstrated the goods sought to be seized will be located at the place identified in the Application.

### 3.    This Court Has the Authority to Issue an *Ex Parte* Temporary Restraining Order.

As previously set forth, under Rule 65 of the Federal Rules of Civil Procedure, a temporary restraining order may be granted without written or oral notice to the opposing party if immediate and irreparable injury will result to the applicant before the adverse party can be heard. As demonstrated above, such irreparable and immediate injury will result to Plaintiff if Defendants are notified prior to the issuance of a temporary restraining order. The need for a

temporary restraining order follows directly from Plaintiff's need for the *ex parte* seizure. Granting a seizure order without further ordering that Defendants cease and desist from engaging in the counterfeiting conduct would effectively undermine the intent of the seizure order and of the Anti-Counterfeiting Act. While the seizure order may prevent Defendants from immediately resuming the sale of Defendants' Goods, it cannot, by itself, maintain the status quo or prevent further wrongful activities. See In re Vuitton et Fils, S.A., 606 F.2d 1, 4 (2d Cir. 1979) ([t]he *ex parte* temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief). See also Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.P.A. v. Helio Import/Exp, Inc., 601 F. Supp. 1, 2 (S.D. Fla. 1983). (granting *ex parte* restraining order to prevent disappearance of counterfeit goods and records).

Based on the evidence and facts presented herein, Plaintiff has shown good cause why an *ex parte* seizure order should be entered. Accordingly, this Court, pursuant to the Anti-Counterfeiting Act of 1984, the Lanham Act, and New York law should enter the *ex parte* restraining and seizure order sought by Plaintiff.

**B.    ENTRY OF A PRELIMINARY INJUNCTION IS APPROPRIATE AND NECESSARY.**

Under the law of this Circuit, in order to obtain a preliminary injunction, Plaintiff "must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000). As will be demonstrated below, Plaintiff will have no problem satisfying the FedEx test and, accordingly, demonstrating that preliminary injunctive relief is appropriate and necessary.

**1.    Probability of Success on the Merits of Plaintiff's Counterfeiting and Infringement Claims.**

13

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . [by] which such use is likely to cause confusion, or to cause mistake, or to deceive." Accordingly, Plaintiff must demonstrate (1) it owns the Chanel Marks at issue; (2) Defendants' use of the Mark is without authorization from Plaintiff; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' Goods. As demonstrated below, Plaintiff can satisfy each of the three requirements of 15 U.S.C. § 1114, and is therefore likely to prevail on its counterfeiting and infringement claims. Thus, entry of a temporary restraining order and preliminary injunction is proper.

First, the Chanel Marks at issue are owned by Plaintiff, and Defendants do not have its authorization to use the mark on Defendants' Goods. See Hahn Decl. at ¶¶5 and 9. Second, Defendants have used the Chanel Marks in commerce by advertising, offering to sell, and selling their counterfeit goods within this Judicial District. See Declarations of Hahn at ¶¶11-13, Tiler at ¶¶10-14, and Gaffigan at ¶2.

The main issue in a trademark infringement action is always whether the activities of the Defendants will result in a likelihood of confusion in the marketplace. "Likelihood of confusion is the basic test for both common law trademark infringement and federal statutory trademark infringement." McCarthy, Thomas J., McCarthy on Trademarks and Unfair Competition, Vol. 3, Sec. 23.01 (rev. ed. 1994). See Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157, 109 S. Ct. 971, 980 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source."). In Polaroid Corp. v Polarad Elec. Corp., 287 F.2d 492, 495 (2d Cir. 1961), the Second Circuit set forth the following eight (8) factors to be weighed in a likelihood of confusion analysis in any trademark infringement case. The eight (8) factors are as follows:

(i)     strength of the mark;

(ii)    similarity of the marks;

(iii)    competitive proximity of the goods;

(iv)    the likelihood that the moving party will bridge the gap and offer a product like the alleged infringer's product

(v)    actual confusion;

(vi)    good faith on the Defendants' part;

(vii)    quality of the Defendants' products; and

(viii)    the sophistication of buyers.

### (i)    Strength of the Mark

In considering the first factor, the strength of the mark, courts look to (i) inherent strength and (ii) acquired strength. TCPIP Holding Co. v. Haar Commc'n, Inc., 244 F.3d 88, 100 (2d Cir. 2001). Inherent strength is measured by the "mark's degree of inherent distinctiveness" along the spectrum of protectability and strength for trademark. Id. The spectrum of protectability and strength for trademarks is divided into four primary types of designations - (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768, 112 S. Ct. 2753, 2757 (1992). Arbitrary or fanciful marks are the strongest. Moreover, arbitrary/fanciful and suggestive marks are deemed inherently distinctive and entitled to protection. See Id. A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1218 (9th Cir. 1987). Plaintiff's Chanel Marks are comprised of inherently distinctive product configurations. The Chanel Marks are strong because they are completely arbitrary and fanciful with respect to the costume jewelry, pendants, earrings and bracelets sold thereunder.

In any event, the Chanel Marks have also acquired secondary meaning. Plaintiff has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Chanel Marks. See Hahn Decl. at ¶6. The Chanel Marks enjoy widespread recognition and are prominent in the minds of the consuming public. Id.

### (ii)    Similarity of the Marks

The Defendants are using marks which are clearly identical to the Chanel Marks. Compare Exhibits "B" attached hereto with the respective Exhibits attached to the Declaration of Tiler. Thus, this factor weighs entirely in Plaintiff's favor.

### (iii)    Competitive Proximity of the Goods

Defendants are selling their counterfeit goods at a retail/wholesale storefront within this Judicial District.   To the average consumer, Defendants' Goods appear to be substantially similar, if not identical, to Plaintiff's genuine costume jewelry, pendants, earrings and bracelets. This is true in appearance only since Defendants' Goods are non-genuine and different in quality. See Hahn Decl. at ¶12. Standing alone, this similarity can be held sufficient to establish a likelihood of confusion. See Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-LeCoultre Watchs, Inc., 221 F.2d 464 (2d Cir. 1955). In view of the foregoing, this factor weighs heavily in favor of Plaintiff.

### (iv)    Likelihood that the Moving Party will Bridge the Gap and Offer a Product Like the Alleged Infringer's Product

Analysis of this particular factor is unnecessary, because Plaintiff already offer goods which are virtually identical to the costume jewelry, pendants, earrings and bracelets being counterfeited by the Defendants.

### (v)    Evidence of Actual Confusion

As evidenced by the Declarations of Hahn and Tiler, in addition to the Exhibits hereto, Defendants are offering to sell and selling counterfeit goods which are virtually identical in appearance to those sold by Plaintiff.  Consumers purchasing Defendants' Goods will likely be actually confused since they are purchasing goods bearing the Chanel Marks under the impression they are purchasing genuine goods authorized by the Plaintiff.

Post-sale, consumers viewing the counterfeits sold by the Defendants will also be confused.  In a case directly on point, Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, Inc., 221 F.2d 464, 466 (2d Cir. 1955), Judge Frank stated as follows:

> [A]t least some customers would buy [the copier's] cheaper clock
> for the purpose of acquiring the prestige gained by displaying what
> many visitors at the customers' homes would regard as a
> prestigious article. [The copier's] wrong thus consisted of the fact
> that such a visitor would be likely to assume that the clock was an
> Atmos clock. . . . [T]he likelihood of such confusion suffices to
> render [the copier's] conduct actionable."

The damage to the senior user in such a case is that consumers could acquire the prestige value of the senior user's product by buying the copier's cheap imitation. Even though the knowledgeable buyer knew that he was getting an imitation, viewers would be confused. Thus, the senior user suffers a loss of sales diverted to the junior user, the same as if the actual buyer were confused.

In 1962, Congress struck out language in the Lanham Act which required confusion, mistake or deception of "purchasers as to the source of origin of such goods and services." Several courts have noted this expansion of the test of infringement and held that it supports a finding of infringement when even non-purchasers are deceived, as in the "Atmos" clock case." Accord Ferrari S.p.A. Esercizio Fabbriche Automobili E Corse v. McBurnie, 11 U.S.P.Q.2d 1843 (S.D. Cal. 1989); Ferrari S.p.A. Esercizio Fabbriche Automobili E Corse v. Roberts, 944 F.2d 1235, 1244, 1245 (6th Cir. 1991) ("The Lanham Act, however, was intended to do more than protect consumers at the point of sale . . . . Ferrari's reputation in the field could be damaged by the marketing of [defendant's] replicas . . . despite the absence of point of sale confusion."). See Rolex Watch U.S.A., Inc. v. Canner, 645 F. Supp. 484, 493, 1 U.S.P.Q.2d 1117 (S.D. Fla. 1986) (confusion and mistake can occur among other persons at a future time, such as viewers of the buyer and recipients of a gift of a counterfeit); U.S. v. Hon, 904 F.2d 803, 804-08 (2d Cir. 1990), cert. denied, 498 U.S. 1069 (1991) (The "likely to confuse" standard is not limited to purchasers and potential purchasers, but includes the general public). See also McCarthy,

Thomas J., <u>McCarthy on Trademarks and Unfair Competition</u>, Vol. 3, Sec. 23.7 (West 4th Ed. 2001). Hence, this factor also weighs heavily in Plaintiff's favor.

Defendants have clearly intentionally copied the Chanel Marks for the purpose of deriving the benefit of Plaintiff's reputation. In the instant matter, Plaintiff has produced evidence that Defendants have been trading on the reputation and goodwill of Plaintiff for the purpose of defrauding the public. In such a case, it is appropriate to infer Defendants intend to benefit from Plaintiff's reputation to the detriment of Plaintiff. See <u>Rolex Watch U.S.A., Inc. v. Canner</u>, 645 F. Supp. 484, 492 (S.D. Fla. 1986).

### (vi)    Good Faith on the Defendants' Part

Exhibits attached hereto make it abundantly clear that the Defendants are not operating in good faith. Rather, the Defendants have slavishly copied the entire product configuration design of Plaintiff's genuine goods and are selling their counterfeit goods at a retail/wholesale storefront. Moreover, Defendants are clearly marketing their counterfeit goods to the same ultimate customer base as Plaintiff, through a retail outlet - the same marketing channel used by Plaintiff.

### (vii)    Quality of the Defendants' Product

The Defendants' counterfeit goods are of an unknown makeup and the goods did not pass through Plaintiff's quality control process. Hahn Decl. ¶12. Accordingly, the goods may represent a health danger to members of the consuming public as the Defendants' counterfeit Chanel branded jewelry products are likely to come in contact with a consumer's skin. Because Defendants' counterfeit goods have an associated public health risk, they are clearly different than Plaintiff's genuine Chanel products, which are of a known, safe, and approved chemical makeup.

### (viii)    Sophistication of Buyers

For consumers purchasing the goods at issue, the most important fact is generally price.

The greater the price of a product, the more careful the typical potential purchaser is expected to be, thereby reducing the likelihood of confusion. See McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1137 (2d Cir. 1979), *overruled on other grounds by* Bristol-Myers Squibb v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1043-44 (2d Cir. 1992) ("the average purchaser of an automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine.")  While the respective goods sold by Plaintiff and the Defendants are not exactly balls of twine, they are very inexpensive jewelry products which consumers likely do not spend a great deal of time selecting. In any event, even a detailed analysis of Defendants' counterfeit products by a consumer would not reveal that they are distinguishable from Plaintiff's genuine goods, because the trademarks being used by the Defendants are identical to the Chanel Marks.  This factor also weighs completely in favor of Plaintiff.

In view of the foregoing, Plaintiff has established the required likelihood of success on the merits of its trademark counterfeiting, infringement, and false designation of origin claims against Defendants.

### 2.  Possibility of Irreparable Injury

Irreparable injury may be presumed as a matter of law where a likelihood of confusion or possible risk to reputation is found to exist. See also Power Test Petrol. Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985) (Plaintiff proves irreparable injury if it "shows that it will lose control over the reputation of its trademark pending trial."  Preliminary injunction affirmed); Black Hills Jewelry Mfg. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir. 1980) ("A finding of tendency to deceive satisfies the requisite of irreparable harm").  "Once the plaintiff in an infringement action has established a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue." Rodeo Collection, Ltd. v. W. Seventh, 812 F.2d 1215, 1220 (9th Cir. 1987).

As demonstrated above, a likelihood of confusion exists herein, because Defendants are engaged in continuous counterfeiting activities using spurious designations, which are

substantially indistinguishable from Plaintiff's actual Chanel Marks. Thus, Plaintiff will continue to suffer irreparable injury to its reputation and goodwill for as long as Defendants are allowed to continue their counterfeiting activities. See Hahn Decl. at ¶8. Moreover, Defendants' Goods are of a substantially different quality to the genuine goods of Plaintiff. See Hahn Decl. at ¶12. As the Second Circuit noted, "[r]eputation is not calculable nor precisely compensable." Power Test Petrol. Distribs., Inc. v. Calcu Gas, Inc., 754 F.2d at 95. Thus, an award of money damages alone will not cure the injury to Plaintiff's reputation as a result of Defendants' infringing actions.

### 3.    The Balance of Hardships Tips Sharply in Plaintiff's Favor

The Plaintiff has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Chanel Marks and the goods associated with such Marks. See Hahn Decl. at ¶¶6-7. Plaintiff has already suffered unquantifiable damage to its reputation as a manufacturer of a quality, safe costume jewelry, pendants, earrings and bracelets. Should Defendants be permitted to continue their trade in counterfeit goods, Plaintiff will continue to suffer substantial losses and damage to its reputation. To the contrary, Defendants will suffer no legitimate hardship in the event a preliminary injunction is issued. Defendants have no legal or equitable right to engage in their present counterfeiting activities. Hence, the issuance of an injunction will only serve to prevent Defendants from engaging in illegal activities.

### 4.    The Relief Sought Serves the Public Interest

The issuance of a preliminary injunction is in the best interest of the general public. Defendants are engaged in criminal activities and are directly defrauding the consuming public by palming off Defendants' Goods as genuine goods of Plaintiff. The public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products. Nike, Inc. v. Leslie, 227 U.S.P.Q. 574, 575 (M.D. Fla. 1985). The public also has a right to be protected from the distribution of potentially harmful chemical products under well known and trusted trademarks.

### 5.    Bond Amount

Plaintiff requests this Court set a total bond in the amount of five thousand dollars ($5,000.00) in connection with the issuance of the seizure order in this matter. The counterfeit goods in question are inexpensive, selling at wholesale for approximately $4.84 to $12.50 per piece depending on the style. The actual cost of Defendants' goods to be seized is therefore likely no more than $1.00 or $2.00 per unit. Accordingly, a five thousand dollar ($5,000.00) bond will more than adequately protect the Defendants' interests.

### 6.    Notice to United States Attorney.

Plaintiff has given notice of its application for an *ex parte* seizure order to the United States Attorney for this Judicial District pursuant to 15 U.S.C. § 1116(d)(2). See Gaffigan Decl. at ¶3.

### C.    STEPHEN M. GAFFIGAN, P.A. AND GIBNEY, ANTHONY & FLAHERTY, LLP SHOULD BE APPOINTED AS SUBSTITUTE CUSTODIANS FOR THE SEIZED GOODS AND DOCUMENTS.

It is appropriate to appoint a substitute custodian with whom the seized goods and business records may be deposited in place of Defendants. See Reebok Int'l, Ltd. v. Marnatech Enters., Inc., 737 F. Supp. 1521, 1525 (S.D. Cal. 1989) (seized goods impounded in the custody of Plaintiffs' agents as substitute custodian held proper). Accordingly, Plaintiff's counsels, Stephen M. Gaffigan, P.A. and Gibney, Anthony & Flaherty, LLP, respectfully request this Court order all goods and records seized to be turned over to their custody for preservation throughout the trial of this matter. It is further requested that this Court limit access to Defendants' seized goods and records to Plaintiff, Plaintiff's counsel, and Defendants and their counsel.

### D.    THE PLAINTIFF SHOULD BE ALLOWED TO ENGAGE IN EXPEDITED DISCOVERY.

Pursuant to 15 U.S.C. §1116(d)(10)(A), this Court must hold a hearing to review the requested seizure between ten (10) and fifteen (15) days after the seizure order is issued. In

connection with that hearing, Subsection 1116(d)(10)(B) provides that this Court "may make such orders modifying the time limits for discovery under the Rules of Civil Procedure as may be necessary to prevent the frustration of the purposes of such hearing." In the instant case, accelerated discovery will benefit the parties by insuring a fully developed record is before this Court at the required hearing. Specifically, Plaintiff requests this Court allow Plaintiff to immediately depose the Defendants and to immediately propound requests for production of documents and interrogatories with a command that responses be served within three (3) days. Such an accelerated discovery schedule will not prejudice the Defendants and will serve the interests of justice. Absence of preliminary discovery will prejudice Plaintiff by denying it the additional documents and information necessary to fully develop its case at the required hearing. In such a case, an order of expedited discovery is appropriate. See Fimab-Finanziaria Maglificio Biellese Fratelli Fila, S.p.A. v. Kitchen, 548 F. Supp. 248, 250 (S.D. Fla. 1982).

### E.   THE COURT FILE SHOULD BE TEMPORARILY SEALED

The element of surprise is of utmost importance if an action for temporary restraining order and seizure is to be effective. Sealing of the court file in a case such as this is expressly provided for in the Anti-Counterfeiting Act. 15 U.S.C. §1116(d)(8). Sealing of a court file protects the identity of the parties and the nature of relief sought, and prevents the criminal counterfeiter from being appraised of the impending seizure.

## IV.    **CONCLUSION**

In view of the foregoing, Plaintiff respectfully requests that its application herein be granted.

DATED this *17th* day of July, 2008.

Respectfully submitted,

GIBNEY, ANTHONY, & FLAHERTY, LLP

By: *John Macaluso*

John Macaluso
665 Fifth Avenue
New York, New York 10022
Telephone: (212) 688-5151
Facsimile: (212) 688-8315
E-mail: jmacaluso@gibney.com

23

Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com

*Of Counsel:*
STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, Florida 33316
Telephone (954) 767-4819
Facsimile (954) 767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff
Chanel, Inc.

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York Corporation, | Case No. |
| Plaintiff, | |
| -against- | |
| | **Filed under seal** |
| MOTIVIC N.Y., INC., a New York corporation, d/b/a MOTIVIC N.Y. d/b/a MOTIVIC d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and KEN CHIU, an individual, d/b/a MOTIVIC N.Y. d/b/a MOTIVIC d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and DOES 1-10 | |
| Defendants. | |

# DECLARATION OF ROBERT HOLMES
## IN SUPPORT OF CHANEL'S EMERGENCY *EX PARTE* APPLICATION

I, Robert Holmes, declare as follows:

1.      I am an officer of IPCybercrime.com, LLC, a licensed private investigative firm located in Plano, Texas.

2.      I am over 18 years of age and the statements set forth herein are made of my own personal knowledge.

3.      In July, 2008, I was retained by Chanel, Inc. to investigate the Defendants, Motivic N.Y., Inc., a New York corporation, d/b/a Motivic N.Y. d/b/a Motivic d/b/a Motivicny.com d/b/a Seven Stars Industries, Ltd. d/b/a TPF ("Motivic N.Y.") and Ken Chiu, an individual, d/b/a Motivic N.Y. d/b/a Motivic d/b/a Motivicny.com d/b/a Seven Stars Industries, Ltd. d/b/a TPF ("Chiu")(collectively the "Motivic Defendants").

4.      On July 15, 2008, I accessed the New York Secretary of State's Division of Corporations database, and conducted a search of the corporate status for Motivic.   My search revealed that Motivic is an active New York business corporation formed on August 29, 1986 with its principal place of business identified as 39 West 32nd Street, 4th Floor, New York, New York 10001-3803.  A true and correct printout from the New York Secretary of State's Division of Corporations database outlining the results of the Motivic search is attached hereto as Exhibit "1."

5.      No member of my firm has publicized the Plaintiff's intent to seek

entry of a temporary restraining order and seizure order to any third party.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NAUGHT.

Dated this  15th  day of July, 2008.

Robert Holmes

# EXHIBIT "1'

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: MOTIVIC N.Y. INC.

Selected Entity Status Information

**Current Entity Name:** MOTIVIC N.Y. INC.
**Initial DOS Filing Date:** AUGUST 29, 1986
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
MOTIVIC N.Y. INC.
39 W. 32ND STREET
4TH FLOOR
NEW YORK, NEW YORK, 10001-3803

**Chairman or Chief Executive Officer**
SWAN CHANG
39 W 32ND ST 4TH FLR
NEW YORK, NEW YORK, 10001-3803

**Principal Executive Office**
MOTIVIC N.Y. INC.
39 W. 32ND STREET
4TH FLOOR
NEW YORK, NEW YORK, 10001-3803

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME;

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

July 28, 2006

THE ATTACHED U.S. TRADEMARK REGISTRATION *612,169* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *September 13, 1955*
*3rd* RENEWAL FOR A TERM OF *10* YEARS FROM   *September 13, 2005*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
    *CHANEL, INC.*
    *A NY CORP*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

T. LAWRENCE
Certifying Officer



# United States Patent Office

612,169
Registered Sept. 13, 1955

## PRINCIPAL REGISTER
### Trademark

Ser. No. 677,202, filed Nov. 24, 1954

# CHANEL

Chanel, Inc. (New York corporation)
1 W. 57th St.
New York 19, N. Y.

For: NECKLACES, in CLASS 28.
First used 1914, and in commerce in or before 1925.
Sec. 2(f).
Owner of Reg. Nos. 513,132, 195,360, and others.



7022979

# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

### UNITED STATES DEPARTMENT OF COMMERCE
#### United States Patent and Trademark Office

July 27, 2006

THE ATTACHED U.S. TRADEMARK REGISTRATION *902,190* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *November 10, 1970*
*2nd* RENEWAL FOR A TERM OF *10* YEARS FROM   *November 10, 2000*
SECTION 8 & 15
SAID RECORDS SHOW TITLE TO BE IN:
  *Registrant*

By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

P. SWAIN
**Certifying Officer**

Int. Cl.: 14

Prior U.S. Cl.: 28

**United States Patent and Trademark Office**
10 Year Renewal

Reg. No. 902,190
Registered Nov. 10, 1970
Renewal Approved Oct. 15, 1990

## TRADEMARK
## PRINCIPAL REGISTER

## CHANEL

CHANEL, INC. (NEW YORK CORPORA-
TION)
9 W. 57TH ST.
NEW YORK, NY 10019

OWNER OF U.S. REG. NO. 612,169.

FOR: BRACELETS, PINS, AND EAR-
RINGS, IN CLASS 28 (INT. CL. 14).
FIRST USE 0-0-1914; IN COMMERCE
0-0-1925.

SER. NO. 72-339,492, FILED 5-28-1969.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Nov. 27, 1990.*

COMMISSIONER OF PATENTS AND TRADEMARKS

# United States Patent Office

902,190
Registered Nov. 10, 1970

## PRINCIPAL REGISTER
### Trademark

*Ser. No. 339,492, filed May 28, 1969*

## CHANEL

Chanel, Inc. (New York corporation)
1 W. 57th St.
New York, N.Y.  10019

For: BRACELETS, PINS, AND EARRINGS, in
CLASS 28 (INT. CL. 14).
First use in 1914; in commerce in or before 1925.
Owner of Reg. No. 612,169.



# THE UNITED STATES OF AMERICA

## TO ALL TO WHOM THESE PRESENTS SHALL COME:

UNITED STATES DEPARTMENT OF COMMERCE

United States Patent and Trademark Office

July 28, 2006

THE ATTACHED U.S. TRADEMARK REGISTRATION *1,501,898* IS
CERTIFIED TO BE A TRUE COPY WHICH IS IN FULL FORCE AND
EFFECT WITH NOTATIONS OF ALL STATUTORY ACTIONS TAKEN
THEREON AS DISCLOSED BY THE RECORDS OF THE UNITED STATES
PATENT AND TRADEMARK OFFICE.

REGISTERED FOR A TERM OF *20* YEARS FROM   *August 30, 1988*
*SECTION 8 & 15*
SAID RECORDS SHOW TITLE TO BE IN:
    *Registrant*


By Authority of the
Under Secretary of Commerce for Intellectual Property
and Director of the United States Patent and Trademark Office

E. BORNETT
Certifying Officer

Int. Cls.: 6, 14, 16, 25 and 26

Prior U.S. Cls.: 13, 28, 37, 39 and 40

**United States Patent and Trademark Office**

Reg. No. 1,501,898
Registered Aug. 30, 1988

## TRADEMARK
### PRINCIPAL REGISTER



CHANEL, INC. (NEW YORK CORPORATION)
9 WEST 57TH STREET
NEW YORK, NY 10019

FOR: KEYCHAINS, IN CLASS 6 (U.S. CL. 13).
FIRST USE 9–0–1981; IN COMMERCE 9–0–1981.
FOR: COSTUME JEWELRY, IN CLASS 14 (U.S. CL. 28).
FIRST USE 9–0–1981; IN COMMERCE 9–0–1981.
FOR: GIFT WRAPPING PAPER , IN CLASS 16 (U.S. CL. 37).
FIRST USE 8–0–1986; IN COMMERCE 8–0–1986.

FOR: BLOUSES, SHOES, BELTS, SCARVES, JACKETS, MEN'S TIES, IN CLASS 25 (U.S. CL. 39).
FIRST USE 9–0–1981; IN COMMERCE 9–0–1981.
FOR: BROOCHES, BUTTONS FOR CLOTH-ING, IN CLASS 26 (U.S. CL. 40).
FIRST USE 9–0–1981; IN COMMERCE 9–0–1981.
OWNER OF U.S. REG. NOS. 195,359, 1,347,094 AND OTHERS.

SER. NO. 644,065, FILED 2–9–1987.

JANE MCCABE, EXAMINING ATTORNEY

Trademark Electronic Search System (TESS)                                              Page 1 of 2

 **United States Patent and Trademark Office**

Home|Site Index|Search|FAQ|Glossary|Guides|Contacts|eBusiness|eBiz alerts|News|Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Wed Aug 29 04:08:02 EDT 2007*

`TESS HOME`  `NEW USER`  `STRUCTURED`  `FREE FORM`  `BROWSE DICT`  `SEARCH OG`  `BOTTOM`  `HELP`

**Logout** Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

`TARR Status`  `ASSIGN Status`  `TDR`  `TTAB Status` *( Use the "Back" button of the Internet Browser to return to TESS)*

# N°5

| | |
|---|---|
| **Word Mark** | N°5 |
| **Goods and Services** | IC 014. US 002 027 028 050. G & S: Jewelry. FIRST USE: 20060301. FIRST USE IN COMMERCE: 20060301 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 76602883 |
| **Filing Date** | July 16, 2004 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | June 21, 2005 |
| **Registration Number** | 3149203 |
| **Registration Date** | September 26, 2006 |
| **Owner** | (REGISTRANT) Chanel, Inc. CORPORATION NEW YORK 9 West 57th Street Legal Department New York NEW YORK 10019 |
| **Attorney of Record** | Veronica L. Hrdy |
| **Prior Registrations** | 0400004;1087963;1171888;AND OTHERS |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

`TESS HOME`  `NEW USER`  `STRUCTURED`  `FREE FORM`  `BROWSE DICT`  `SEARCH OG`  `TOP`  `HELP`

Trademark Electronic Search System (TESS)

Trademark Electronic Search System (TESS)

 **United States Patent and Trademark Office**

Home  Site Index  Search  FAQ  Glossary  Guides  Contacts  eBusiness  eBiz alerts  News  Help

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Fri Apr 4 04:12:56 EDT 2008

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | |
| CURR LIST | | | | NEXT DOC | LAST DOC | | | |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [      ]  OR Jump to record: [      ]  **Record 1 out of 2**

TARR Status   ASSIGN Status   TDR   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*

# CHANEL

| | |
|---|---|
| **Word Mark** | CHANEL |
| **Goods and Services** | IC 014. US 002 027 028 050. G & S: Jewelry and watches. FIRST USE: 19140000. FIRST USE IN COMMERCE: 19250000 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78725496 |
| **Filing Date** | October 3, 2005 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | May 30, 2006 |
| **Registration Number** | 3133139 |
| **Registration Date** | August 22, 2006 |

Trademark Electronic Search System (TESS)

| | |
|---|---|
| **Owner** | (REGISTRANT) Chanel, Inc. CORPORATION NEW YORK 9 West 57th Street New York NEW YORK 10019 |
| **Prior Registrations** | 0195360;0612169;2812740;AND OTHERS |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | |
|---|---|---|---|---|---|---|---|---|
| CURR LIST | | | | NEXT DOC | LAST DOC | | | |

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail: jmacaluso@gibney.com

*Of Counsel:*
STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, Florida 33316
Telephone (954) 767-4819
Facsimile (954) 767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff
Chanel, Inc.

## THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York Corporation, | Case No. |
| Plaintiff, | |
| -against- | |
| | **Filed under seal** |
| MOTIVIC N.Y., INC., a New York corporation, d/b/a MOTIVIC N.Y. d/b/a MOTIVIC d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and KEN CHIU, an individual, d/b/a MOTIVIC d/b/a MOTIVIC N.Y. d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and DOES 1-10 | |
| Defendants. | |

## DECLARATION OF ADRIENNE HAHN SISBARRO
## IN SUPPORT OF CHANEL'S EMERGENCY *EX PARTE* APPLICATION

I, Adrienne Hahn Sisbarro, state and declare as follows:

1.    I am over 18 years of age and have personal knowledge of the facts set forth herein.

2.    I am employed by Chanel, Inc. ("Chanel"), as Director, Legal Administration.  I have been so employed since 1988.  Chanel is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th Avenue, New York, New York 10019.

3.    In my capacity as Chanel's Director, Legal Administration, I am responsible, in part, for Chanel's trademark and anti-counterfeiting efforts in the United States.  As a result, I am fully familiar with most aspects of the manufacture, sale, and distribution of genuine Chanel products, including costume jewelry, pendants, earrings and bracelets, and I have been trained to identify the distinctions between genuine Chanel merchandise and counterfeit copies of the same.

4.    Since the 1920s, Chanel has been engaged in the manufacture, promotion, distribution, and sale in interstate commerce of high quality products under the "CHANEL" and "CC MONOGRAM" trademarks identified below.

5.    Chanel is, and at all times relevant hereto has been the sole owner of all rights in and to the following federally registered trademarks:

| Mark | Reg. No. | Reg. Date |
|------|----------|-----------|
| CHANEL | 0,612,169 | September 13, 1955 |
| CHANEL | 0,902,190 | November 10, 1970 |
| CC MONOGRAM | 1,501,898 | August 30, 1988 |
| N°5 | 3,149,203 | September 26, 2006 |
| CHANEL | 3,133,139 | August 22, 2006 |

2

The Chanel Marks are registered in International Class 14 and are used in connection with the manufacture and distribution of, among other things, costume jewelry, including earrings, bracelets, pendants, and rings (the "Chanel Marks"). True and correct copies of the Federal Registrations for the Chanel Marks are attached as Exhibit "B" to Plaintiff's Emergency *Ex Parte* Application.

6. Genuine Chanel products are marketed and sold at Chanel boutiques throughout the United States, at high quality, prestigious retail stores, and via the Internet. During the more than 80 years Chanel has sold its products in interstate commerce under the Chanel Marks, Chanel has spent tens of millions of dollars to extensively advertise and promote its goods and associated trademarks. In the last five years alone, Chanel's sales of high quality earrings, pendants, rings and other costume jewelry products have been well into many millions of dollars.

7. As a result of the foregoing, the Chanel Marks have acquired fame in the consumer market for a wide variety of costume jewelry products, including high quality earrings, pendants, rings and other goods. The Chanel Marks have come to symbolize the enormous goodwill of Chanel's costume jewelry business throughout the United States and the world. No other manufacturer lawfully uses the Chanel Marks or any substantially similar marks for similar types of goods. The Chanel Marks have never been abandoned. Chanel actively polices and enforces its trademark rights

8. The Chanel Marks are vital to Chanel's business, as the marks represent virtually the entire value of Chanel's overall business and associated image. Chanel suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time any third parties, including the Defendants, sell counterfeit goods bearing identical or substantially similar trademarks.

3

9.    In or about June, 2008, Chanel learned Motivic N.Y., Inc., a New York corporation, d/b/a Motivic NY d/b/a Motivic d/b/a Motivicny.com d/b/a Seven Stars Industries, Ltd. d/b/a TPF, and Ken Chiu, an individual, d/b/a Motivic NY d/b/a Motivic d/b/a Motivicny.com d/b/a Seven Stars Industries, Ltd. d/b/a TPF (collectively the "Motivic Defendants") were selling earrings, pendants and other goods under the Chanel Marks without authorization, via a wholesale distribution business in New York.  However, the Chanel Marks have never been assigned or licensed to the Motivic Defendants, and the Motivic Defendants do not have, nor have they ever had, the right or authority to use the Chanel Marks for any purpose.

10.    In June, 2008, as part of its ongoing investigations regarding the sale of counterfeit Chanel products, Chanel retained Investigative Consultants, a licensed private investigative firm based in Lawndale, California, to investigate the Motivic Defendants.

11.    On June 23, 2008, Karin Tiler, a licensed private investigator employed by Investigative Consultants, traveled to the Motivic Defendants' business location, and purchased five pendant and earring sets and two bracelets bearing one or more the Chanel Marks.  The Chanel branded pendants, earrings and bracelets purchased by Investigator Tiler from the Motivic Defendants were delivered, with the appropriate Chain of Custody, to Chanel for inspection by me.    See Declaration of Karin Tiler attached as Exhibit "D" to Plaintiff's Emergency *Ex Parte* Application ("Tiler Decl.") together with attached supporting Exhibits.

12.    I personally analyzed the Chanel branded pendants, earrings and bracelets purchased from the Motivic Defendants by Investigator Tiler and determined they were non-genuine Chanel products.  I reached this conclusion based on my observations that the workmanship and materials used to make the pendants, earrings and bracelets are inferior to those used on genuine Chanel pendants, earrings and bracelets, and costume jewelry items.

4

Further, the pendants, earrings and bracelets I analyzed are styles for which there are no exact genuine Chanel matches.

13.     In view of the foregoing, I can confirm the costume jewelry items purchased by Investigator Tiler from the Motivic Defendants are non-genuine counterfeit products and are of a different quality to genuine Chanel costume jewelry products.

14.     Neither Chanel's investigation of the Motivic Defendants or the fact that Chanel is seeking a temporary restraining order and seizure order have been made public by any employee or representative of Chanel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

FURTHER DECLARANT SAYETH NAUGHT.

Dated this _16th_ day of July, 2008.

Adrienne Hahn Sisbarro

Gibney, Anthony & Flaherty, LLP
John Macaluso (JM 2058)
665 Fifth Avenue
New York, New York 10022
Telephone (212) 688-5151
Facsimile (212) 688-8315
E-mail:  jmacaluso@gibney.com

*Of Counsel:*
STEPHEN M. GAFFIGAN, P.A.
Stephen M. Gaffigan
312 S.E. 17th Street – Second Floor
Ft. Lauderdale, Florida 33316
Telephone (954) 767-4819
Facsimile (954) 767-4821
Email: stephen@smgpa.net

Attorneys for Plaintiff
Chanel, Inc.

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANEL, INC., a New York Corporation, | Case No. |
| Plaintiff, | |
| -against- | |
| | **Filed under seal** |
| MOTIVIC N.Y., INC., a New York corporation, d/b/a MOTIVIC N.Y. d/b/a MOTIVIC d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and KEN CHIU, an individual, d/b/a MOTIVIC N.Y. d/b/a MOTIVIC d/b/a MOTIVICNY.COM d/b/a SEVEN STARS INDUSTRIES, LTD. d/b/a TPF, and DOES 1-10 | |
| Defendants. | |

# DECLARATION OF STEPHEN M. GAFFIGAN
## IN SUPPORT OF CHANEL'S EMERGENCY *EX PARTE* APPLICATION

I, Stephen M. Gaffigan, declare as follows:

1.      I am an attorney for the Plaintiff in the above captioned action and am duly authorized and licensed to practice law before all courts in the State of Florida, the Southern, Eastern District of Michigan, and the Eleventh Circuit Court of Appeals, and Federal Circuit Court of Appeals.  I am personally knowledgeable of the matters set forth in this Declaration and if called upon to do so, I could and would competently testify to the facts set forth below.

2.      As part of its ongoing investigation and action against third parties engaged in the promotion, advertisement, offer to sell and sale of counterfeit Chanel branded products, on behalf of Chanel, I filed a trademark infringement and counterfeiting lawsuit against Options Quality Replica Jewelry, Inc. and Thomas and Jan Donnell d/b/a OptionsJewelry.net, OptionsJewelry.biz d/b/a OptionsJewelry.com d/b/a WholesaleReplicaJewelry.net d/b/a OptionsOnline.net in (collectively the "Donnells") in the District of Arizona.     In connection with Chanel's action against the Donnells, the Donnells identified Motivic N.Y., Inc. located at 39 West 32nd Street, 4th Floor, New York, New York 10001, Tel: 212-643-9020, Fax: 212-643-9026, as their supplier of counterfeit Chanel branded jewelry products.   True and correct copies of the invoices issued by the Motivic Defendants in connection with the sale of counterfeit Chanel branded jewelry

products, and produced by the Donnells, are attached hereto as Composite Exhibit "1."

3.    On July 16, 2008, I provided notice of the Plaintiff's application for an *ex parte* seizure order to the United States Attorney for the District of New Jersey pursuant to 15 U.S.C. § 1116(d)(2).  A true and correct copy of the letter sent by me on July 16, 2008, providing notice to the United States Attorney for the Southern District of New York is attached hereto as Exhibit "2."

4.    No member of my firm has publicized the Plaintiff's intent to seek entry of a temporary restraining order and seizure order to any third party.

I declare under penalty of perjury that the foregoing is true and correct.

FURTHER DECLARANT SAYETH NAUGHT.

Dated this 16th day of July, 2008.

_Stephen M. Gaffigan_
Stephen M. Gaffigan

# EXHIBIT "1'

DONNEL PROPERTIES

# MOTIVIC

39 West 32nd Street, 4th Floor
New York, NY 10001
(212) 643-9020 • Fax: (212) 643-9026



ACCOUNT NO:   0J04??

| | |
|---|---|
| **I N V O I C E  T O** | OPTIONS JEWELRY<br>6775 N.ROCKING ROAD<br>SCOTTSDALE, AZ 05250<br>USA |
| **S H I P P E D  T O** | OPTIONS JEWELRY<br>6775 N.ROCKING ROAD<br>SCOTTSDALE, AZ 85250<br>USA<br>ZONE 4 |

| SLSMN NO | SHIPPED VIA | SLSMN. NAME | CONTROL NO. | CUSTOMER ORDER NO. | ORDER DATE | TERMS |
|---|---|---|---|---|---|---|
| L1 | BLUE | LETISIA LETVAN1545 | | | 12/18/06 | CREDIT CARD |

| QUANTITY SHIPPED DOZ PCS | U/M | STOCK NUMBER | ITEM DESCRIPTION | UNIT COST | EXTENSION |
|---|---|---|---|---|---|
| 1 | EA | | ASSORTED SS JEWELRY | 45.60 | 45.60 |
| | | | SUB TOTAL | | 45.60 |
| | | | FREIGHT CHARGE | | 16.10 |

```
. . . . . . . . . MOTIVIC NY
        39 W. 32ND STREET 4TH FL.
           NEW YORK, NY 10001
              212-643-9020

            C O P Y
        10/18/2006  17:30
        Sale:

        Transaction #         1
        Card Type:        VISA
        Acc:    4023003260664692
        Exp. Date:        1007
        Entry:          Manual
        Sale:         61.70
        Reference No.:  00000001
        Auth.Code:       03893B
        Response       APPROVED
```

Case 1:08-cv-06413-PAC Document 2-5 Filed 08/01/2008 Page 6 of 9

# MOTIVIC

39 West 32nd Street, 4th Floor
New York, NY 10001
(212) 643-9020 • Fax: (212) 643-9026




ACCOUNT NO: OJA201

INVOICE TO:
OPTIONS JEWELRY
6726 N.ROCKING ROAD
SCOTTSDALE, AZ 85250
USA

SHIPPED TO:
OPTIONS JEWELRY
6726 N.ROCKING ROAD
SCOTTSDALE, AZ 85250
USA
ZONE :

| SL.VN. NO. | SHIPPED VIA | SLSMN. NAME | CONTROL NO. | CUSTOMER ORDER NO. | ORDER DATE | TERMS |
|---|---|---|---|---|---|---|

| QUANTITY SHIPPED DOZ PCS | U/M | STOCK NUMBER | ITEM DESCRIPTION | UNIT COST | EXTENSION |
|---|---|---|---|---|---|
| 1 | EA | | ASSORTED SS JEWELRY | 92.20 | 92.20 |
| | | | SUB TOTAL | | 92.20 |
| | | | FREIGHT CHARGE | | 18.15 |

```
................
      MOTIVIC NY
39 W. 32ND STREET 4TH FL.
     NEW YORK, NY 10001
       212-643-9020

       C O P Y
   02/14/2007 17:15
     Sale:

Transaction #          1
Card Type:         VISA
Acc:    4023003260664692
Exp. Date:         1007
Entry:           Manual
Sale:         110.35
Reference No.:  00000001
Auth.Code:       005908
Response        APPROVED
```

# EXHIBIT "2'

LAW OFFICES

# STEPHEN M. GAFFIGAN, P.A.

312 Southeast 17th Street
Second Floor
Ft. Lauderdale, Florida 33316
Telephone:   (954) 767-4819
Facsimile:   (954) 767-4821

July 16, 2008

**Via Facsimile (212) 637-2684**

Michael J. Garcia
United States District Attorney
Southern District of New York
86 Chambers Street
New York City, New York 10007

     **Re:    Chanel, Inc. v. Motivic N.Y., Inc., et al.**

Dear Mr. Garcia:

     This firm represents Chanel, Inc. ("Chanel"), in connection with anti-counterfeiting matters, and is filing an emergency *ex parte* application for a seizure order, to be entered in the Southern District of New York against the following entity and individual at the following location:

Motivic N.Y., Inc., a New York corporation
d/b/a Motivic N.Y. d/b/a Motivic d/b/a Motivicny.com d/b/a
Seven Stars Industries, Ltd. d/b/a TPF
39 West 32nd Street, 4th Floor
New York, New York 10001
AND
Ken Chiu, an individual,
d/b/a Motivic N.Y. d/b/a Motivic d/b/a Motivicny.com
d/b/a Seven Stars Industries, Ltd. d/b/a TPF
39 West 32nd Street, 4th Floor
New York, New York 10001

Michael J. Garcia
May 1, 2008
Page 2

     This correspondence is to provide you with notice of the requested seizure pursuant to 15 U.S.C. § 1116(d)(2).


Sincerely,

Stephen M. Gaffigan